AO 106 (Rev. 01/09) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

for the

District of Kansas

FEB 2 7 2015

Clerk, U.S. District Court
By _____ Deputy Clerk

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
INFORMATION ASSOCIATED WITH BRAYMOND1992@GMAIL.COM )
AN EMAIL ACCOUNT MAINTAINED BY GOOGLE, INC. )
1600 AMPHITHEATRE PARKWAY )
MOUNTAIN VIEW, CALIFORNIA

Case No. 15 - M - 6042-01 - KMH

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ Northern _____ District of _____ California _____ *(identify the person or describe property to be searched and give its location):*

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ 18 _____ U.S.C. § _____ 2252, 2252A _____ , and the application is based on these facts:

☑ Continued on the attached sheet. (see attached affidavit of probable cause)

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Angie Wilson, TFO FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/27/15

_____
*Judge's signature*

City and state: Wichita, KS

Karen M. Humphreys, United States Magistrate Judge
*Printed name and title*

## THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

IN THE MATTER OF THE                )
SEARCH OF:                          )
                                    )
BRAYMOND1992@GMAIL.COM              )          15-M-6042-01-KMH
                                    )
AN EMAIL ACCOUNT                    )          FILED UNDER SEAL
MAINTAINED BY GOOGLE, INC.          )
1600 AMPHITHEATRE PARKWAY           )
MOUNTAIN VIEW, CALIFORNIA           )

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Angie Wilson, a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), Kansas City, Missouri, being duly sworn, depose and state as follows:

1.      I have been employed as a Kansas Bureau of Investigation Special Agent since May 2001, and am currently assigned to the FBI Child Exploitation Task Force, Kansas City, Missouri. Since June 2003, I have been assigned to investigate computer crimes to include violations against children. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended training such as the annual Crimes Against Children Conference and Innocent Images training provided by the FBI. I have assisted in the investigation of hundreds of child pornography cases. During that time I have had to view thousands of images of child pornography. I have previously applied the federal definition of child pornography used in this affidavit to dozens of search warrant applications and in dozens of grand jury presentations. As a TFO, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. At all times throughout this affidavit I use the term "child pornography" merely as shorthand to refer to visual depictions of actual minors

engaged in sexually explicit conduct.   I use the terms "visual depiction," "minor," and "sexually explicit conduct" as those terms are defined in 18 U.S.C. § 2256.

2.      I am investigating activities occurring at braymond1992@gmail.com.  As will be shown below, there is probable cause to believe Bill Raymond used the above listed email addresses to facilitate the distribution, and/or possession of child pornography, in violation of Title 18, United States Code, Section 2252.   I am submitting this affidavit in support of a search warrant authorizing a search of the email address "braymond1992@gmail.com," which is more particularly described in Attachment A, for the items specified in Attachment B hereto, which items constitute contraband, instrumentalities, fruits, and evidence of the foregoing violations.   I am requesting authority to search the entire contents of the email addresses where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as contraband, instrumentalities, fruits, and evidence of crime.

3.      The statements in this affidavit are based on information received from the National Center for Missing and Exploited Children (NCMEC) and my investigation of this matter.   Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only the facts that I believe are necessary to establish probable cause to believe contraband, evidence, and instrumentalities of the violation of Title 18, United States Code, Sections 2252 and 2252A are presently located within the email address of "braymond1992@gmail.com".

### DEFINITIONS

4.      The following definitions apply to this Affidavit and the Attachments to this Affidavit:

        a.      *__"Child Pornography"__* includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of

a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

b.   *"Minor"* means any person under the age of 18 years.  *See* 18 U.S.C. § 2256(1).

c.   *"Sexually explicit conduct"* applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C).  In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.  *See* 18 U.S.C. § 2256(2) (A).

d.   *"Visual depictions"* include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  *See* 18 U.S.C. § 2256(5).

e.   *"Child Erotica"* means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

f.   *"Computer"* refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  *See* 18 U.S.C. § 1030(e) (1).  This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.

g.   *"Computer hardware"* consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, CDs and DVDs, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access

to computer hardware (including, but not limited to, physical keys and locks).

h.   ***"Computer software"*** is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i.   ***"Computer passwords and data security devices"*** consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.   ***"Computer-related documentation"*** consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

k.   ***"Internet Protocol address"*** or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

### *BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY*

5.   Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology and the Internet have revolutionized the manner in which child pornography is produced and distributed.

a.   Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

b.      Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

c.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

d.      The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion. The venues include services offered by Internet Portals such as Yahoo!, MSN (Hotmail/Outlook), and Google (Gmail), among others. These online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. Other services include remote storage, such as DropBox or SkyDrive. Through these services, a user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

e.      Because of the anonymity associated with the Internet, collectors of child pornography have been known to use more than one avenue for obtaining child pornography or communicating about child pornography. For instance, an individual with an interest in children may meet an individual on an online social networking forum, engage in private discussions via a different messaging application, and then trade images via password protected storage or an email account.

f.      As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing

files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

6.      Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

      a.      Computer storage devices (like flash drives, hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

      b.      Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

7.      In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In

addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

8.     In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime(s), within the meaning of 18 U.S.C. §§ 2252 through 2256, and should all be seized as such.

### *CHARACTERISTICS COMMON TO CHILD PORNOGRAPHERS*

9.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals involved in such crimes:

a.     Those who produce or possess child pornography, or who conspire or attempt to commit these crimes may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     Those who produce or possess child pornography, or who attempt or conspire to commit these crimes may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals often times use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Those who produce or possess child pornography, or who attempt or conspire to commit these crimes often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondences, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. **These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence,**

            **books, tape recordings, mailing lists, child erotica, and videotapes for many years.**

d.      Likewise, those who produce or possess child pornography, or who attempt or conspire to commit these crimes often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. **These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued greatly by the offender.**

e.      Those who produce or possess child pornography, or who attempt or conspire to commit these crimes also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individual with whom they have been in contact and who share the same interests in child pornography.

f.      **Those who produce or possess child pornography, or who attempt or conspire to commit these crimes prefer not to be without their child pornography for any prolonged time period.** This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## ADDITIONAL INFORMATION ON ELECTRONIC COMMUNICATIONS SERVICE PROVIDERS

10.     Because this investigation relates to the use of an email account to store, access, or distribute an image of child pornography, I am providing the following background information associated with email accounts, which is based on my training and experience:

a.      Email is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends email, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An email server may allow users to post and read messages and to communicate via electronic means.

b.      One such service is Gmail, a service offered by Google, Inc. This email service is available free of charge. Subscribers obtain an account by registering on the Internet with Gmail. Gmail asks subscribers to provide

basic information, such as name, gender, zip code, and other personal/biographical information. However, Gmail does not verify the information provided.

    c.    Gmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, email transaction information, and account application information.

    d.    Subscribers to Gmail may access their accounts on servers maintained and/or owned by Gmail from any computer connected to the Internet located anywhere in the world.

    e.    Any email that is sent to a Gmail subscriber is stored in the subscriber's "mailbox" on Gmail's servers until the subscriber deletes the email or the subscriber's mailbox exceeds the storage limits preset by Gmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on the Gmail server indefinitely.

    f.    Gmail users also have the option of saving a copy of the email that the user sends. Unless the sender of the email specifically deletes the email from the Gmail server, the email can remain on the system indefinitely. The sender can delete the stored email message, thereby eliminating it from the email box maintained at Gmail, but that message will remain in the recipient's email box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

    g.    A Gmail subscriber can store files, including emails and image files, on servers maintained and/or owned by Gmail. Emails and image files stored on a Gmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store emails and/or other files on the Gmail server for which there is insufficient storage space in the subscriber's computer and/or which he does not wish to maintain in the computer in his residence. Therefore, a search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Gmail server.

11.    Generally, when served with a search warrant for electronic communications, the electronic communications service provider (ECSP), such as Google/Gmail, will send the contents of the specified account(s) to the investigation agency, usually on a CD, DVD or via email, for the investigator to review.

12.     The ECSP can copy the contents of the entire account because that is within their expertise.  Though the ECSP affirms that the records relate to the specified email account, the provider does not and will not undertake the examination of the contents of an account to make a determination as to what is relevant or irrelevant to the investigation.

13.     The ECSP copies the account as the ECSP finds it at the time of service of the search warrant (unless a preservation letter was sent earlier).  **The information provided to law enforcement is only the information currently stored or maintained in the account – it may not, and likely is not, the entire account containing every email since the account's creation.**

14.     Generally, and in this case particularly, the ECSP is not familiar with the investigation and is not in a position to identify the victim(s) or subject(s) of the investigation.

15.     The ECSP is neither qualified nor trained to search the account information as would a law enforcement officer.   Only a trained agent, familiar with the statutory violations and facts of the case, can determine what items should be or should not be seized.   For these reasons, your Affiant requests the provider disclose the records listed in Section 1 of Attachment B, for the account(s) listed in Attachment A.

16.     Because the account itself is being used to facilitate the crimes described herein, Affiant believes that the account may be seized as an instrumentality of the crime, similar to a computer, for examination similar to a computer.

### *FACTS OF THE INVESTIGATION*

17.     On November 9, 2014, Google, an internet email service provider, detected a user of "braymond1992@gmail.com" attempting to upload an image of child pornography.   Google

captured information associated with this transaction and submitted CyberTip Report 3081871 to the National Center for Missing and Exploited Children (NCMEC) via NCMEC's CyberTipline.

18.     Upon receipt of the CyberTip, NCMEC reviewed the information and conducted additional research to identify the appropriate law enforcement agency (or agencies).   NCMEC then made the CyberTip available to that agency (or agencies).   In this case, the CyberTip was referred to the FBI, Kansas City field office.

19.     The information captured by Google and provided in the CyberTip report included:

a.     identification of the account involved in the upload as "braymond1992@gmail.com";

b.     the image;

c.     the date and time of the upload (11-9-2014 19:27:29 UTC);

d.     the intended recipient or "to" email address of "braymond10@cox.net;"

e.     the IP address associated with the upload (68.102.100.165);

f.     additional historical IP address for the account logins for the "braymond1992@gmail.com" account; and

g.     the account creation date for the "braymond1992@gmail.com" account.

20.     NCMEC conducted an automated "geo-lookup" search based on the historical IP address information.   This automated search identified the ISPs associated with the IP addresses. Cox Communications was identified as the ISP for the IP address associated with the upload (68.102.100.165).

20.     NCMEC also identified another CyberTip (#3099936) associated with the "braymond1992@gmail.com" account.

21.    NCMEC    developed    additional    information    associated    with    the "braymond1992@gmail.com" account and the IP address of 68.102.100.165 at the time of the upload.

**Research into "braymond1992@gmail.com"**

22.    On November 17, 2014, NCMEC served an administrative subpoena on Google for the purpose of obtaining subscriber information regarding the "braymond1992@gmail.com" account.

23.    On November 20, 2014, Google responded with IP history and the following information for the "braymond1992@gmail.com" account:

> Name: Bill Raymond
> e-mail: braymond1992@gmail.com
> End of Service Date:  11/09/2014, 19:30:26 UTC
> Recovery e-mail: Raymond@cityofmhk.com
> Created on: 8/1/2013, 10:49:44 UTC
> SMS:  316-706-4822

24.    On November 21, 2014, NCMEC served an administrative subpoena on Verizon Wireless to provide information pertaining to telephone number 316-706-4822 (the SMS number associated with the "braymond1992@gmail.com" account).

25.    On November 21, 2014, Verizon Wireless responded with the following information:

> SMS:            316-706-4822
> Last Name:      Raymond
> First Name:     Bill
> Address:        1007 Walnut Ct
> City:           Andover
> State:          KS
> Zip Code:       670029018
> Phone No.1:     3167064822
> Country:        USA
> Mtn:            3167064822

MTN Effective Date: 7/31/2013

26.     This research indicated the user was located in Kansas, and would later be combined with other research to refer the matter to the FBI, Kansas City Field Office.

27.     Additional open source information associated with the "recovery" email address ("Raymond@cityofmhk.com") for the "braymond1992@gmail.com" account revealed Bill Raymond is the City Attorney for the City of Manhattan, Kansas.

### Research into IP Address 68.102.100.165

28.     Using publicly available resources, NCMEC identified the IP address of 68.102.100.165 to be operated by Cox Communications.

29.     On November 18, 2014, NCMEC served an administrative subpoena on Cox Communications to provide information pertaining to IP address 68.102.100.165 at 11/09/2014, 19:27:29 UTC (the time of the upload) and two additional times provided by Google, 11/08/2014, 15:55:50 UTC and 10/18/2014, 06:27:01 UTC.

30.     On December 4, 2014, Cox Communications responded with IP history and the following subscriber information:

> Name:            Bill Raymond
> Address:         1007 Walnut Ct, Andover, KS   67002-9018
> Home Phone: 316-706-4822
> CDT Phone:   316-260-9775
> Preferred Email: braymond10@cox.net

### Additional Research by NCMEC into Bill Raymond

31.     NCMEC ran a search through the CLEAR database for 1007 Walnut Ct, Andover, KS 67002-9018 with the following results:

> Name:        Bill D. Raymond
> DOB:         03/20/1962
> SSN:         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

Address:      1007 Walnut Ct, Andover, KS   67002-9018

**CyberTip made available to FBI**

32.    Because of Bill Raymond's apparent position as a City Attorney for Manhattan (Riley County), Kansas, NCMEC determined to make the CyberTip report available to the FBI rather than the Kansas ICAC (as Riley County Police Department is a Kansas ICAC affiliate).

33.    On February 2, 2015, TFO Jones received the lead with the above described information.   TFO Jones reviewed the image reported by Google to NCMEC.   The image depicts a prepubescent female lying back with her legs spread apart.   She is being vaginally penetrated by an adult male penis.

34.    TFO Jones conducted additional online research into the City Attorney email account, determining that the City of Manhattan uses the "cityofmhk.com" domain for its employee's work email accounts.   Because Bill Raymond has a specified email account associated with his legal business, it is not believed "braymond1992@gmail.com" nor "braymond10@cox.net" is used for his work as an attorney.   As such, a "filter" team is not necessary.

### *DESCRIPTION OF THE PROPERTY TO BE SEARCHED*

35.    The property to be searched are the servers of Google/Gmail and, more specifically, the email account for "braymond1992@gmail.com."   The Google Corporate location where the search warrant will be served is Google Legal Investigations Support, 1600 Amphitheatre Parkway, Mountain View, California 94043.

---

## *CONCLUSION*

36.     Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that a user of the above listed email address used that email address to facilitate the distribution and/or possession of child pornography. Your Affiant respectfully submits that there is probable cause to believe that the email address was used to violate 18 U.S.C. §§ 2252 and 2252A. Additionally, there is probable cause to believe that evidence of the commission of criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2252A (violations pertaining to the distribution, receipt, and possession of child pornography), is located within the email address, listed in Attachment A to this affidavit, and the evidence, listed in Attachment B, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

37.     Your Affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of account listed in Attachment A, for the items listed in Attachment B.

Angie Jones
Task Force Officer
Federal Bureau of Investigation

Sworn and subscribed before me this 27th day of February, 2015.

THE HONORABLE KAREN M. HUMPHREYS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### *PROPERTY TO BE SEIZED AND SEARCHED*

This warrant applies to information associated with:

### "braymond1992@gmail.com"

that is stored at premises owned, maintained, controlled, or operated by Google Inc., an e-mail

provider headquartered at 1600 Amphitheatre Parkway Mountain View, CA  94043

## ATTACHMENT B

### *PROPERTY TO BE SEARCHED AND SEIZED*

**I.       Information to be disclosed by Google Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google Inc., including any e-mails, records, files, logs, or information that have been deleted but are still available to Google Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

   a.       The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

   b.       All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

   c.       All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

   d.       All records pertaining to communications between Google Inc. and any person regarding the account, including contacts with support services and records of actions taken.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 USC §2252 and 2252A (certain activities relating to material involving the sexual exploitation of minors), including:

   a.       data tending to show the user of the account, including but not limited to subscriber information, IP logs, address books, friend-lists or buddy-lists, headers, salutations, and email content referencing the user or other identifier information such as credit card numbers, phone numbers or physical addresses;

b.   content that is child pornography or indicative of an interest in the sexual exploitation of children, including but not limited to images of child pornography, images of child erotica, communications about child pornography or the possession, receipt, distribution or production of such materials or the sexual exploitation of children, communications about literature or writings related to the sexual exploitation of children;

c.   records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.